Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HJELM, JJ.
Dissent: JABAR, J.
MEAD, J.
[¶ 1] Matthew J. Wallace and Freja Fol-ce [1] appeal from a summary judgment entered by the Superior Court (Cumberland County, Mills, J.) in favor of State Farm Mutual Automobile Insurance Company on their complaint seeking underinsured motorist (UM) payments from two policies issued by State Farm. The plaintiffs contend that the court erred in finding that the tortfeasor who injured them in a motor vehicle accident was not an underinsured driver pursuant to Maine’s UM statute, and therefore there was no gap in coverage requiring State Farm to pay UM benefits. We affirm the judgment.
I. FACTS AND PROCEDURE
[¶ 2] For the purpose of deciding their respective motions for summary judgment, the parties stipulated to the following facts. On September 29, 2011, Matthew Wallace was driving south on Route 26 in Woodstock; Freja Folce and her minor daughter Zoe were passengers in the vehicle. Corey Hill, who was driving in the opposite direction in a vehicle owned by his employer, Twin Pines Construction, Inc., lost control while attempting to pass another vehicle, crossed the centerline, and collided with Wallace’s vehicle. The accident was caused by Hill’s negligence.
[¶ 3] Hill was acting in the course and scope of his employment when the accident occurred. His Twin Pines vehicle was in *991 sured under a Safety Insurance Company policy that provided liability coverage of $50,000 per person and $100,000 per accident. Twin Pines was also insured under an excess policy issued by Alterra Excess Surplus Insurance Company providing $2,000,000 in excess commercial auto liability coverage; however, the Alterra policy required Twin Pines to maintain $1,000,000 in primary coverage, and provided that Alterra was liable only “to the extent that it would have been held liable had the insured complied” with that requirement. The policies issued to Twin Pines by Safety and Alterra were the only policies providing coverage to Twin Pines and Hill for the accident.
[¶ 4] The plaintiffs were insured under a State Farm policy covering their vehicle; that policy provided UM coverage of $100,000 per person and $300,000 per accident, Wallace was also insured under a separate State Farm policy covering a different vehicle with the same UM coverage limits.
[¶ 5] In August 2013, the plaintiffs filed complaints, which were later consolidated, against Twin Pines, Hill, and State Farm. After the plaintiffs settled with Twin Pines, Alterra paid its excess policy limits — $1,000,000 to Wallace and $1,000,000 to Freja Folce. Safety also paid its policy limits — $50,000 to Freja Folce and $50,000 for the benefit of Zoe. All claims against defendants other than State Farm were then dismissed with prejudice.
[¶6] The plaintiffs and State Farm agreed for purposes of summary judgment that the plaintiffs’ aggregate damages exceeded $100,000 — the per accident limit of Safety’s primary policy — which would entitle the plaintiffs to UM benefits under the State Farm policies if State Farm were liable to pay UM benefits. The parties agreed to resolve the legal issue of State Farm’s liability by summary judgment.
[¶ 7] In May 2016, State Farm moved for summary judgment and the plaintiffs moved for partial summary judgment. By order dated August 8, 2016, the court denied the plaintiffs’ motion and entered summary judgment for State Farm upon finding that “Defendant Hill was not an underinsured driver” at the time of the accident and therefore “State Farm is not required to pay.” The plaintiffs appealed.
II. DISCUSSION
[¶ 8] Using the stipulated facts, we review the court’s entry of summary judgment for State Farm de novo as a question of law. Estate of Barron v. Shapiro & Morley, LLC, 2017 ME 51, ¶ 12, 157 A.3d 769.
[¶ 9] Regarding the insurance coverage for the plaintiffs’ damages, the first $100,000 has been paid by the Safety primary policy, and damages in the $1-3 million range have been paid by the Alterra excess policy. The question we must resolve is whether the intermediate range from $100,000 to the limits of State Farm’s UM liability represents a gap in coverage, meaning that Hill was an underinsured driver, or whether the $2.1 million in payments by Safety and Alterra, significantly exceeding State Farm’s maximum UM liability, means that, as the trial court found, “Hill was not an underinsured driver.”
[¶ 10] The plaintiffs argue that for the first $1 million in damages Hill was under-insured, because the amount of their State Farm UM coverage exceeded the amount of his Safety primary liability coverage. See 24-A M.R.S. § 2902(1) (2016) (“ ‘[U]n-derinsured motor vehicle’ means a motor vehicle for which coverage is provided, but in amounts ... less than the limits of the injured party’s uninsured vehicle coverage.”). They assert that that fact is not altered by Alterra’s excess coverage, which did not begin until their damages exceeded *992 $1 million, and so “for any damages of $1,000,000 or less, [Alterra’s] payments to Plaintiffs cannot be in any sense an- offset from State Farm’s uninsured motorist coverage amount.”
[¶ 11] State Farm’s position is straightforward: the plaintiffs’ maximum UM coverage is less than the $2.1 million that they received from Twin Pines’s liability insurers;. therefore,' there is no underinsured motorist gap that State Farm is responsible to cover. That position, adopted by the Superior Court, is supported by our decisions.
[¶ 12] In construing 24-A M.R.S. § 2902 (2016), we have said that “[t]he goal of the UM statute was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party. The statute does not support double recovery or a windfall to the plaintiff.” Tibbetts v. Dairyland Ins. Co., 2010 ME 61, ¶ 12, 999 A.2d 930 (citation and quotation marks omitted); see Dickau v. Vt. Mut. Ins. Co., 2014 ME 158, ¶ 43, 107 A.3d 621; Farthing v. Allstate Ins. Co., 2010 ME 131, ¶ 6, 10 A.3d 667. “There is no Maine authority to support the contention that an insured injured by a single tortfea-sor may recover a total that is greater than the insured’s UM coverage limit.” Farthing, 2010 ME 131, ¶ 6, 10 A.3d 667 (alteration and quotation marks omitted). Accordingly, “we have ,., characterized UM insurance as gap coverage” that “fills the gap left by an underinsured tortfea-sor.” Tibbetts, 2010 ME 61, ¶¶ 17, 21, 999 A.2d 930 (quotation marks omitted).
[¶ 13] The UM statute provides that “[i]n the event of payment to any person under uninsured vehicle coverage ... to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made.” 24-A M.R.S. § 2902(4) (emphasis added). In Tibbetts, we noted that section 2902(4) “explicitly requires” offsetting a tortfeasor’s payment from a damages award, and-concluded that the offset applied in that case even though the payor was an excess insurer, saying that- “[i]n keeping with [the goal of the UM statute] any compensatory payments received by the plaintiff reduce the gap, in coverage, and are offset against the judgment.” Tibbetts, 2010 ME 61, ¶¶ 11, 12, 999 A.2d 930 (emphasis added). Here,, the $2 million paid by Alterra is a “compensatory payment[ ] received by the plaintiffs],” id. ¶ 12, and so that payment must be offset.
[¶ 14] In Farthing, the plaintiff contended that $20,000 paid by the tortfeasor’s insurer, “reduced the total damages she could recover, not the amount she could recover ■ under her UM coverage,” which had a $100,000 per person limit. 2010 ME 131, ¶¶ 2-3, 10 A.3d 667, We. applied the formula set out in Tibbetts[2] and concluded that
[a]pplying the Tibbetts formula to these facts, if [the tortfeasor] had been insured to the amount of [the plaintiff’s] UM coverage, [the plaintiff] would have recovered $100,000 from [the tortfea- *993 sor’s] insurer, given [the plaintiffs] damages. The amount actually paid by.[the tortfeasor], $20,000, is subtracted from that amount, leaving $80,000 as the coverage gap that Allstate was responsible to, and did, pay. Accordingly, [the plaintiff] in fact recovered $100,000, just as she would have had [the tortfeasor’s] insurance been equal to [the plaintiffs] UM coverage. That result is consistent with the goal of the UM statute, in that it provides [the plaintiff] as the injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent..
Id. ¶ 8 (quotation marks omitted). Here, the plaintiffs have recovered far more from the tortfeasor’s insurers than the maximum amount of UM coverage provided by the State Farm policies. Accordingly, they have surpassed “the same recovery which would have been available had the tortfea-sor been insured to the. same extent.” Id. (quotation marks omitted).
[¶ 15] We recently reaffirmed the Farthing process:
When the total damages are' greater than the amount of UM/UIM coverage ... [section 2902(4)] mandates that insurers offset the amount of coverage available in the UM/UIM policy, rather than the amount of damages incurred, by the amount actually paid by the tort-feasor. We have explained that the reason for doing so is that the goal of the UM statute is to provide an injured insured the same recovery that would have been available had the tortfeasor been insured to the same extent as the injured party. Thus, it was proper to offset the amount of available coverage with the other motorist’s payment ....
Graf v. State Farm Mut. Auto. Ins. Co., 2016 ME 153, ¶ 17, 149 A.3d 529 (emphasis added) (alterations, original emphases, citations, and quotation marks omitted). Here, offsetting the amount of UM coverage available to the plaintiffs with Twin Pines’ $2.1 million payment yields the trial court’s result — -“There is no gap in coverage and defendant State Farm is not required to pay.”
The entry is: ■ •
Judgment affirmed.

. Freja Folce appears individually and as next friend of Zoe Folce.

. In Tibbetts, we explained that a gap in coverage for which the injured insured’s UM carrier is responsible, and the required offset of payments by the tortfeasor, is determined by “initially ask[ing] what amount the injured party would recover if the tortfeasor were insured to the amount of the injured party’s UM coverage. If damages are less than the total policy limits ... the injured party would recover his damages in full. If damages exceed the total limits, he would recover that total limit, After determining this recovery amount, the court then subtracts the amounts already paid by the tortfeasor or by insurers in settlement, and thereby determines the coverage gap,” Tibbetts v. Dairyland Ins. Co., 2010 ME 61, ¶ 18, 999 A.2d 930.